IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| NACHURS ALPINE SOLUTIONS, CORP., f/k/a Na-Churs Plant Food Company, a Delaware Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>NUTRA-FLO COMPANY, an Iowa Corporation, and BRIAN K. BANKS,<br><br>Defendants. | No. 15-CV-4015-LTS<br><br>**ORDER** |

## I.  INTRODUCTION

This matter is before the Court pursuant to a Motion to Quash Subpoena filed by The Andersons, a nonparty to this suit. (Doc. 86). Plaintiff Nachurs Alpine Solutions, Corp, the party who served the subpoena, resists the motion. (Doc. 87). For the reasons that follow, the Court grants The Andersons' motion to quash.

## II.  BACKGROUND

As this Court has already concisely summarized about the general history of this case:

> Plaintiff Nachurs Alpine Solutions Corp. (NAS) filed suit alleging, in summary, that its former employee, Brian Banks (Banks), stole trade secrets and provided them to his new employer, defendant Nutra-Flo Company (Nutra-Flo). Both NAS and Nutra-Flo are in the fertilizer business. NAS's complaint alleges that after Banks announced his resignation on January 23, 2015 (effective February 6, 2015), on February 3, 2015, shortly before he left NAS, Nutra-Flo announced the launch of a new fertilizer containing potassium acetate that NAS believes is the same product it had developed. On February 9, 2015, Banks began working for Nutra-Flo. In March 2015, NAS brought this law suit. In May 2015, The

1

Andersons, Inc. (Andersons), purchased Nutra-Flo. Banks began working for The Andersons. NAS alleges that Andersons began marketing products similar to its potassium acetate fertilizer after it purchased Nutra-Flo and employed Banks.

(Doc. 59, at 1-2).

On September 14, 2016, Nachurs filed a motion to join The Andersons as a party. (Doc. 61). The Court denied this motion on October 17, 2016, and The Andersons remain a nonparty to the dispute. (Doc. 74). Subsequently, the parties agreed to a scheduling order and discovery plan on October 20, 2016. (Doc. 76). This agreement, *inter alia*, included the deadline for Nutra-Flo's expert witness disclosures as January 12, 2017, and completion of discovery by June 2, 2017. (*Id.*). Pursuant with this plan, Nutra-Flo provided Nachurs with their disclosure of expert testimony. (Doc. 87-2). Of the three expert witnesses disclosed by Nutra-Flo, Nachurs specifically takes issue with the proposed testimony of Dr. Barry Fanning, who is the current research and development manager for The Andersons. (Doc. 87, at 4-8). According to Nutra-Flo's disclosure of its expert witnesses:

> Dr. Fanning is expected to testify regarding the chemical process for making potassium acetate. Dr. Fanning will testify that the process is widely known and is not difficult or complicated. Dr. Fanning is further expected to testify about The Andersons, Inc.'s purchase of companies that used potassium acetate in their fertilizer products, including New Eezy-Gro, Inc., and that The Andersons has always produced its 0-0-24 product (24-K), 3-0-20 product (Foliar K), 3-0-15 product (Bean Maker) and 3-5-15 product (First Pass) with potassium acetate. Specifically, all of these products were made with potassium acetajjte prior to 2015. Dr. Fanning will also testify regarding the use of potassium acetate in the fertilizer industry at large. Finally, Dr. Fanning will testify regarding the process of new product development, specifically, new product development in the agricultural industry.

(Doc. 87-2, at 2).

Seemingly in response to this disclosure, Nachurs issued a subpoena on The Andersons on February 8, 2017. (Doc. 86, at 1). In this subpoena, Nachurs primarily

seeks information relating to the proposed testimony of Dr. Fanning. (Doc. 87, at 4-8). On March 2, 2017, The Andersons filed its motion to quash Nachurs' subpoena. (Doc. 86). The Andersons argue that the subpoena should be quashed because it requests irrelevant information, creates an undue burden on The Andersons, and causes significant competitive injury to The Andersons by requesting trade secrets and confidential information. (*Id.*).

### III. STANDARD OF REVIEW

"Generally, a party may obtain discovery regarding any nonprivileged matter that is relevant to any claim or defense." *Wells v. Lamplight Farms Inc.*, 298 F.R.D. 428, 433 (N.D. Iowa 2014). "Nonetheless, '[s]ome threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case.'" *Id.* (alteration in original) (quoting *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir.1992)). "Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action." FED. R. EVID. 401. Additionally, "*[e]ven if relevant,* discovery is not permitted where no need is shown, or compliance would be unduly burdensome, or where harm to the person from whom discovery is sought outweighs the need of the person seeking discovery of the information." *Am. Broad. Companies, Inc. v. Aereo, Inc.*, No. 13-MC-0059, 2013 WL 5276124, at *7 (N.D. Iowa Sept. 17, 2013) (alteration in original). In determining whether an undue burden exists, this Court has held,

> [f]actors which may be considered by the Court in determining whether an undue burden exists include: (1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the discovery request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed.

3

*Id.* In addition to these factors, "concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs." *Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 927 (8th Cir. 1999). "Indeed, if discovery can easily be obtained from a party, it may be inappropriate to demand the same discovery from a nonparty." *Wells*, 298 F.R.D. at 433. Although the party requesting discovery has a "duty . . . to take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena," the burden is on the party resisting production to establish an undue burden or lack of relevance. *Id.* (internal quotation marks omitted). *See also Ferrell v. IBP, Inc.*, No. C98-4047-MJM, 2000 WL 34032907, at *1 (N.D. Iowa Apr. 28, 2000). "[T]he mere statement by a party that the interrogatory [or request for production] was 'overly broad, burdensome, oppressive and irrelevant' is not adequate to voice a successful objection." *St. Paul Reinsurance Co. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 511 (N.D. Iowa 2000) (alterations in original) (internal quotation marks omitted). "On the contrary, the party resisting discovery must show specifically how each interrogatory [or request for production] is not relevant or how each question is overly broad, burdensome or oppressive." *Id.,* at 512 (alterations in original) (internal quotation marks omitted).

## IV.   DISCUSSION

Nachurs' discovery requests essentially fall under two categories. Requests 1-11 seek information relevant only due to the proposed testimony of Dr. Fanning. In contrast, Requests 12 and 13 seek information that is purportedly relevant on grounds independent of Dr. Fanning's proposed testimony. The Court will address each of these two categories in turn.

*A.    Requests Seeking Information to Support Expert Witness' Testimony*

In its first eleven requests, Nachurs seeks the following information relating to Dr. Fanning's testimony:

1. Any and all documents identifying, describing, or evidencing The Andersons' research into the chemical process for making potassium acetate.

2. Any and all documents identifying, describing, or evidencing The Andersons' purchase of companies that used potassium acetate in their fertilizer products, including but not limited to: New Eezy-Gro, Inc.

3. Any and all documents identifying, describing, or evidencing The Andersons' research into 0-0-24 (24-K) prior to 2015.

4. Any and all documents identifying, describing, or evidencing The Andersons' research into 3-0-20 (Foliar K) prior to 2015.

5. Any and all documents identifying, describing, or evidencing The Andersons' research into 3-0-15 (Bean Maker) prior to 2015.

6. Any and all documents identifying, describing, or evidencing The Andersons' research into 3-5-15 (First Pass) prior to 2015.

7. Any and all documents identifying, describing, or evidencing The Andersons' process for developing new products, including but not limited to: developmental flowcharts; developmental workflows; internal controls governing the development of new products and new product development checklists.

8. Any and all documents identifying, describing, or evidencing sales of 3-5-15 by The Andersons (or an affiliated company purchased by The Andersons) since April 2013.

9. Any and all documents identifying, describing, or evidencing sales of 3-0-15 by The Andersons (or an affiliated company purchased by The Andersons) since 2011.

10. Any and all documents identifying, describing, or evidencing sales of 0-0-24 by The Andersons (or an affiliated company purchased by The Andersons) since 2000.

11. Any and all documents identifying, describing, or evidencing sales of 3-0-20 by The Andersons (or an affiliated company purchased by The Andersons) since 2000.

Nachurs seeks the enumerated information from The Andersons, a nonparty, based on the fact that an employee of The Andersons, Dr. Barry Fanning, is retained as an expert witness for Nutra-Flo. Nachurs generally alleges that it has made the threshold showing of relevance required for this information to be discoverable because the information is a necessary aid in their search for "relevant information to support" the testimony of Dr. Fanning, *i.e.*, the relevance of the information is derived from the anticipated content of Dr. Fanning's testimony. (Doc. 87, at 6).[1] To be clear, "Nachurs is *specifically* seeking supporting information relied upon by [Dr. Fanning]." (*Id.*, at 10) (emphasis added).

In essence, Nachurs is arguing that defendant has failed to comply with Rule 26(a)(2)(B)(ii) of the Federal Rules of Civil Procedure. Rule 26(a)(2)(B)(ii) requires an expert witness to submit a written report to the other party which details the "facts or data" considered by the witness in forming their testimony. FED. R. CIV. P. 26(a)(2)(B)(ii). "Facts or data considered by the witness" is to be construed broadly. *Johnson v. Mead Johnson & Co., LLC*, No. CV 11-225 (JNE/LIB), 2012 WL 12894483, at *3 (D. Minn. Aug. 13, 2012) (internal quotation marks omitted). Broad construction is required because "[t]he purpose of these requirements is to ensure that the expert report

---

[1] *See also* (Doc. 87, at 5) ("Nachurs' request is relevant as it simply seeks background information to support Dr. Fanning's expected testimony in this case."); (*Id.*, at 6) ("Nachurs' request is narrowly tailored to secure supporting information related to testimony being offered by Dr. Fanning, an employee of The Andersons."); (*Id.*, at 8) ("Nachurs' requests are narrowly tailored to getting supporting information using the dates and products identified by Nutra-Flo and its experts").

discloses not only the expert's opinion on a subject, but also how and why the expert reached a particular result." *State Farm Mut. Automobile Ins. Co. v. Physiomatrix, Inc.*, No. 12-CV-11500, 2014 WL 10294798, at *2 (E.D. Mich. June 16, 2014) (internal quotation marks omitted). As a result, "[a]n expert report must provide sufficient detail to ensure opposing counsel is not forced to depose an expert in order to avoid an ambush at trial." *Id.* (internal quotation marks omitted).

The Court finds Nachurs has failed to establish the threshold of relevance required before discovery is warranted. Nachurs seems to assume that Dr. Fanning must have "considered" all of these documents due to the broad construction that "facts and data considered" is given and thus the documents are relevant and discoverable from The Andersons. *See* (Doc. 87, at 11) ("*Because Rule 26 is interpreted broadly*, Nachurs' requests are relevant.") (emphasis added). Although "facts and data considered" is indeed broad, it is not limitless. Rather, it only includes "any information furnished to a testifying expert that such an expert generates, reviews, reflects upon, reads, and/or uses in connection with the formulation of his opinions, even if such information is ultimately rejected." *Fialkowski v. Perry*, No. CIV.A. 11-5139, 2012 WL 2527020, at *3 (E.D. Pa. June 29, 2012). Furthermore, as The Andersons alludes to, "relying on memory is different than reviewing 'facts or data' under Rule 26(a)(2)(B)(ii)." *United States v. Bazaarvoice, Inc*, No. C 13-00133 WHO (LB), 2013 WL 3784240, at *3 (N.D. Cal. July 18, 2013). It is possible that Dr. Fanning considered none, some, or all of the documents requested by Nachurs. The Court will not assume, as Nachurs seems to do, that all of the documents it now requests in the subpoena were considered by Dr. Fanning.

Nachurs has made no showing that Dr. Fanning considered all of the documents it now seeks to obtain from The Andersons. If Nachurs believes the documents were considered, then the remedy for Nachurs is not to subpoena a non-party employer of Dr. Fanning, but to seek a full disclosure under Rule 26 from the party-defendants. If Nachurs believes defendants have not fully complied with Rule 26, then Nachurs can file a motion to compel production from defendants, setting forth sufficient grounds to

demonstrate noncompliance. The Court will not permit Nachurs to side-step this procedure through a subpoena on the expert witness' nonparty employer. Because it is ultimately unclear whether the requested documents are relevant at all without a showing that Dr. Fanning considered them in reaching his opinion, Nachurs has failed to make the required showing of relevance necessary before it may "open wide the doors of discovery." *Wells*, 298 F.R.D. at 433. As a result, the Court grants The Andersons' motion to quash the subpoena as to requests 1 through 11.

Even if the Court were to assume that the requested documents were relevant, the Court finds the requests are still overbroad on their face based on the reason advanced by Nachurs as to its need for the information. *See* FED. R. CIV. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense *and proportional to the needs of the case*.") (emphasis added); *accord Maxtena, Inc. v. Marks*, 289 F.R.D. 427, 434 (D. Md. 2012) ("[A]ll permissible discovery must be measured against the yardstick of proportionality.") (internal quotation marks omitted). To reiterate, Nachurs argues that it needs the information to generally uncover supporting information for Dr. Fanning's testimony. Nachurs should first seek that information from defendants and, if unsatisfied, could file a motion to compel disclosure.[2] Yet, rather than requesting the documents which Dr. Fanning actually considered in forming his opinion (which consists largely of general assertions about the agricultural industry), Nachurs requests potentially voluminous data specifically pertaining to the operation of The Andersons that likely far exceeds the scope of what Dr. Fanning likely considered in reaching his opinion. Nachurs not only seeks information that spans over 17 years and obviously predates this litigation to "support" a

---

[2] *Compare* (Doc. 87, at 10) ("With that information in hand, Nachurs will be able to effectively depose Dr. Barry Fanning and Doyle Meeker to establish the true difficulty and pitfalls companies face when trying to add potassium acetate to a fertilizer product.") *with*, *State Farm*, 2014 WL 10294798, at *4 ("The whole purpose of Rule 26's expert report requirement is to alleviate a party's need to depose an expert witness prior to trial and shorten or decrease the need for expert depositions and thus to conserve resources.") (internal quotation marks omitted).

general assertion by Dr. Fanning, but most problematically, asks for all documents which pertain to The Andersons research of some existing and all future products. Because the scope of discovery far outweighs the need for the information, the Court finds this to be independent grounds for granting The Andersons' motion to quash the subpoena as to these requests. *See Miscellaneous Docket Matter*, 197 F.3d at 926 (affirming quashing of subpoena on undue burden grounds because party requesting discovery had additional means of obtaining the requested information); *accord Heitzman v. Engelstad*, No. 12-CV-2274 MJD/LIB, 2013 WL 4519403, at *4 (D. Minn. July 11, 2013), *aff'd*, No. CIV. 12-2274 MJD/LIB, 2013 WL 4516320 (D. Minn. Aug. 26, 2013) (holding that the undue burden on a nonparty of "exploring the entirety of her marriage to and divorce" was not outweighed by the need for the party seeking discovery where the relevant information sought was of narrower scope and could be obtained simply by asking the opposing party a direct question).

B. *Requests Seeking Information Independent of Expert Witness Testimony*

Nachurs subpoena contained two additional requests, requests 12 and 13, which are essentially unrelated to Dr. Fanning's proposed testimony. In request 12, Nachurs seeks the following:

> Any and all documents identifying communications made between The Andersons and Brian Banks between January 1, 2014 and May 2015.

Nachurs argues that this information is relevant in determining if Brian Banks shared or attempted to share confidential information with nonparty The Andersons. In considering motions to quash, courts routinely give special consideration to nonparties. *Am. Broad. Companies*, 2013 WL 5276124, at *6. Rule 26(b)(2)(C)(i) of the Federal Rules of Civil Procedure specifically provides that a court *must* limit the frequency or extent of discovery otherwise allowed if it determines that "the discovery sought . . . can be obtained from some other source that is more convenient, less burdensome, or less expensive." FED. R. CIV. P. 26(b)(2)(C)(i) (emphasis added). In other words, if "the

party seeking the information can easily obtain the same information without burdening the nonparty, the court will quash the subpoena." *Precourt v. Fairbank Reconstruction Corp.*, 280 F.R.D. 462, 467 (D. S.D. 2011) (citing *In re Cantrell*, No. 09–mc–0158–CV–W–GAF, 2009 WL 1066011, at *2 (W.D. Mo. Apr. 21, 2009)). Accordingly, in the absence of extenuating circumstances, documents discoverable from both a nonparty and a party must be obtained from a party. *See, e.g.*, *Ingersoll v. Farmland Foods, Inc.*, No. 10-6046-CV-SJ-FJG, 2011 WL 1131129, at *8 (W.D. Mo. Mar. 28, 2011) ("[W]hile non-party discovery can be undertaken, at this point in time there is no indication that plaintiffs cannot get the same or similar information from defendant."); *Cantrell*, 2009 WL 1066011, at *2 (holding that subpoena to nonparty was unduly burdensome because the party requesting information admitted that it could be first sought by the party defendants); *Black Card, LLC v. VISA U.S.A.*, Inc., No. 15-CV-027-S, 2016 WL 7325684, at *3 (D. Wyo. May 9, 2016) (holding that, because a party possessed "most, if not all, the requested information," that information could be obtained from a more convenient and less burdensome source than the nonparty).

The Court finds Nachurs has established the necessary threshold of relevance for this information. If Brian Banks was attempting to share trade secrets with The Andersons, that fact would clearly have a "tendency" to make it more probable that Brian Banks shared trade secrets with another company, Nutra-Flo, during that same timeframe, which clearly goes to the merits of the case. FED. R. EVID. 401.

The Andersons argues that, even if the request is relevant, however, it constitutes an undue burden because Brian Banks is a party to the lawsuit and has already responded to Nachurs' discovery request for communications with The Andersons. (Doc. 88, at 5). Nachurs responds that Brian Banks' discovery response included no documents evidencing communications between Brian Banks and The Andersons, and thus argues that the information should be discoverable from The Andersons. (Doc. 87, at 11 n.1). In essence, the dispute is whether Brian Banks' discovery response constitutes the type

of extenuating circumstance indicating that the requested information is not easily obtainable from Brian Banks.

The Court finds The Andersons has met its burden of establishing that the requested information presents an undue burden. The decision in *Tresona Multimedia, LLC v. Legg*, No. 15 C 4834, 2015 WL 4911093 (N.D. Ill. Aug. 17, 2015), is particularly instructive. In *Tresona*, the plaintiff requested documents from the defendant and similarly alleged that their attempts to obtain discovery from the defendant were unsuccessful due to the defendant's alleged improper withholding of requested documents, which justified discovery of the same information from a nonparty. *Id.*, at *3. The court disagreed, deferring to the general rule that a discovery request on a nonparty which seeks information readily available to a party should be quashed. *Id.* Specifically rejecting the claim that improper withholding justified nonparty discovery, the court held "[a] plaintiff does not demonstrate a compelling need to seek duplicative third-party requests simply because a party in the underlying action fails to comply with document requests for the same information." *Id.* Because the plaintiff did not give any indication that it would pursue a remedy against the defendant for improperly withholding information, the court found that the plaintiff had "not exercised reasonable diligence in pursuing the desired information from the defendant, the least intrusive means of obtaining the information . . .." *Id.* For the same reasons, the Court here finds that this request presents an undue burden on The Andersons. As a result, the Court grants The Andersons' motion to quash the subpoena as to request 12.

In request 13, Nachurs seeks to subpoena documents reflecting the following information from The Andersons:

> The amount and evidentiary basis of any sales or projected sales of any of the following products: (a) Andersons 0-0-24; (b) Andersons 3-0-15; (c) Andersons 3-5-15; (d) Andersons 3-0-15; (e) Nutra K-24.

Nachurs argues that this information is relevant because, aside from the need to have information to support the testimony of Dr. Fanning discussed *supra*, it also "goes to the

issue of damages." (Doc. 87, at 8). Specifically, Nachurs argues that, because their own expert intends to testify that projected gross profits of approximately $81,521,593 through 2020 will be negatively impacted due to Nutra-Flo's alleged violations, the requested information is relevant. (*Id.*). The Andersons argue that the sales and projected sales of their fertilizer products are irrelevant to Nachurs' lost profits because The Andersons is a nonparty. (Doc. 88, at 6).

The sales of nonparty The Andersons is not relevant to the issue of damages. Rather, Nachurs asks for "vast quantities of information that relate only tangentially to resolution of any of the issues in the case." *Shukh v. Seagate Tech., LLC*, 295 F.R.D. 228, 237 (D. Minn. 2013). This Court has already denied Nachurs' motion to join The Andersons as a party. In so doing, this Court has already spoken to the issues of damages relating from The Andersons allegedly availing themselves of the benefit of Nutra-Flo's alleged misconduct. (Doc. 74). Specifically, this Court denied Nachurs' argument for joinder under Rule 19(a)(1)(a) of the Federal Rules of Civil Procedure, in which Nachurs argued that any lost profits from the date of The Andersons acquisition of Nutra-Flo would be caused by The Andersons. (*Id.*, at 3). In ultimately rejecting Nachurs' argument, this Court stated, "Nachurs concedes that its claims against the existing defendants are 'separate and independent from the liability of The Andersons.' If so, Nachurs can pursue that separate and independent claim in a separate and independent lawsuit." (*Id.*, at 7). Because Nachurs' request is relevant only to a separate and independent lawsuit, not the instant case, the Court grants The Andersons' motion to quash the subpoena as to request 13.

## V. CONCLUSION

For the reasons set forth above, the Court grants nonparty The Andersons' motion quash Nachurs' subpoena (Doc. 86).

**IT IS SO ORDERED** this 17th day of April, 2017.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa