# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

| | | |
|---|---|---|
| NACHURS ALPINE SOLUTIONS, CORP., | | |
| Plaintiff, | | No. 15-CV-4015-LTS |
| vs. | | **ORDER** |
| BRIAN K. BANKS and NUTRA-FLO COMPANY, | | |
| Defendants. | | |

## I.    INTRODUCTION

This matter is before the Court pursuant to plaintiff's resisted motion to compel the production of electronically stored information ("ESI").  (Doc. 102).  Plaintiff argues that defendants' ESI discovery responses were deficient in that plaintiff believes defendants wrongfully withheld documents generated as a result of a search of ESI on the ground that the documents were deemed beyond the scope of discovery.  Neither party requested oral argument on the motion and the Court finds argument unnecessary.  For the reasons that follow, the Court grants in part and denies in part plaintiff's motion to compel production of ESI documents.

## II.    BACKGROUND

On March 10, 2015, plaintiff filed suit against defendants in this Court.  (Doc. 2). Plaintiff and defendant Nutra-Flo Company ("Nutra-Flo") are competitors engaged in the business of manufacturing and selling fertilizer.  Plaintiff's complaint alleged, generally speaking, that its former employee, defendant Brian Banks ("Banks"), took confidential, proprietary, and trade secret information from plaintiff and provided that information to

his new employer, defendant Nutra-Flo. After litigation regarding a preliminary injunction, defendants filed an answer on April 15, 2015, generally denying all allegations. (Doc. 27).

Discovery followed during which a dispute arose over the search and production of ESI. The Court ultimately entered an order regarding ESI. (Doc. 68). Using search terms approved in the Court's order, defendants searched their ESI for documents containing those search terms. Defendants then reviewed those documents for privilege, duplication, and relevance.

On March 13, 2017, defendants produced a first batch of ESI, along with a privilege log reflecting documents withheld on privilege grounds. Apparently defendants withheld documents as being nonresponsive (e.g., outside the scope of discovery), but did not so indicate.

On April 19, 2017, defendants produced a second batch of ESI, along with another privilege log. This production included placer-sheets stating "Non-Responsive File" marking documents defendants believed were nonresponsive. These nonresponsive file sheets represented 235 documents.

Through discussions, plaintiff apparently discovered there were more than 44,000 other documents that defendants had withheld from the first batch on the ground that they were nonresponsive. Between the two productions, defendants provided plaintiff with 11,687 documents, but withheld 44,337 documents as being nonresponsive.[1]

---

[1] The actual number of documents produced and in dispute is unclear. The numbers used above come from plaintiff's pleadings. Defendants assert that 55,552 documents contained search terms, which after de-duplication was reduced to 36,933 documents. (Doc. 118, at 2). Of these, defendants withheld 532 as privileged and 24,479 as outside the scope of discovery. (Doc. 118, at 4). Defendants state they produced 11,922 ESI documents to plaintiff. (*Id*.). The Court is puzzled at how plaintiff believes defendants have withheld approximately 44,000 documents, and defendants claim they have withheld approximately 24,000 documents.

Plaintiff took issue with the withholding of documents as nonresponsive and the parties attempted to resolve their differences. At the parties' request, the Court held an informal conference call with the parties to discuss their dispute. Following the conference call, defendants produced a log to plaintiff regarding all documents withheld as nonresponsive. The parties again attempted to work out their dispute regarding ESI and reached a partial compromise. Defendants agreed to produce all of the documents from the second batch that had been withheld as nonresponsive on the condition that: (1) the documents would be designated as Attorneys Eyes Only; (2) the production of the documents would not serve as an admission that the documents were responsive. The parties were unable to reach an agreement as to all of the other documents defendants have withheld on the ground that they were unresponsive.

## III.    DISCUSSION

### A.    The Parties' Arguments

Based on a review of the privilege logs, plaintiff believes that defendants have withheld a substantial number of documents that are relevant. Plaintiff has identified 28 categories of documents it believes were properly withheld as unresponsive, but has identified four categories of documents it believes are relevant:

(1) Documents that reference potassium acetate or a product that contained potassium acetate in the title;

(2) Documents sent to or from Brian Banks and/or regarding Banks' role at Nutra-Flo;

(3) Documents regarding or referencing plaintiff; and

(4) Documents reflecting product sales.

(Doc. 102-8, at 3). In support of its motion, plaintiff provided a number of examples that based on the privilege log description plaintiff believes the documents would contain relevant information. (Doc. 102-8, at 3 nn. 3-6). Plaintiff seeks an order compelling

defendants to produce all documents other than those that fall within the 28 categories plaintiff believes are unresponsive, with defendants to bear the costs of sifting through the withheld documents to cull out those within the 28 categories. Alternatively, plaintiff requests an order requiring defendants to produce all of the nonresponsive documents under the same conditions as those produced in the second batch (i.e., (1) Attorneys Eyes Only designation; and (2) no admission of relevance), with defendants paying attorneys' fees for the cost of culling through the documents for responsive documents. (Doc. 108-2, at 7-8).

Defendants resist plaintiff's motion, arguing that plaintiff's motion amounts to a request that defendants "perform a second, costly review of all of the 24,479 documents withheld as non-responsive." (Doc. 118, at 5). Defendants argue that this amounts to "asking this Court to tear up its old ESI Order and establish a brand new one." (Id.). Defendants further argue that culling through the nonresponsive documents would involve using search terms (i.e., Brian Banks' role at Nutra-Flo, and Nutra-Flo's product sales) that were not part of the Court's ESI Order. (Doc. 118, at 6). Ultimately, defendants argue that this discovery request is disproportional and plaintiff has obtained the information through other means, such as depositions, requests for production of documents, and interrogatories. (Doc. 118, at 7-12). With respect to the specific examples plaintiff identified of descriptions that appear to suggest relevant documents were withheld, defendants demonstrated that the documents were either irrelevant or already produced in some other form. (Doc. 118, at 11-12).

In its reply, plaintiff argues that it is not requiring defendants to conduct a new search of ESI; rather, it is requesting that defendants cull through the documents identified through search terms from the ESI, but which defendants withheld as being beyond the scope of discovery. (Doc. 119, at 1). Plaintiff argues that it has, in the alternative, agreed to do the work itself (albeit, with defendants paying the cost), and that the "only logical reason why" defendants would not agree to this arrangement is because "there is something

4

relevant in those documents that [defendants] do not want [plaintiff] to find." (Doc. 119, at 2). Plaintiff also argues that to the extent that defendants can explain away some of the documents it withheld on the ground that they were already produced, then defendants violated the ESI order regarding duplicates and argues that "[a]t the very least, this Court should compel Nutra-Flo to comply with the ESI Order and identify all documents that were withheld as nonresponsive that had already been produced in the three batches of ESI production." (Doc. 119, at 3-4).

### B.    *Analysis*

In analyzing the merits of plaintiff's motion to compel, the Court begins with looking at the Federal Rules of Civil Procedure regarding the scope of discovery and the obligation of the parties. Rule 26(b)(1) of the Federal Rules of Civil Procedure provides:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

FED. R. CIV. P. 26(b)(1). Rule 26(b) is widely acknowledged as "liberal in scope and interpretation, extending to those matters which are relevant and reasonably calculated to lead to the discovery of admissible evidence." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992) (internal citation omitted). Rule 401 of the Federal Rules of Evidence reads: "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401.

Under the rules, district courts possess considerable discretion in determining the need for, and form of, discovery. *See Admiral Theatre Corp. v. Douglas Theatre Co.*,

585 F.2d 877, 898–99 (8th Cir.1978).  Rule 26 "vests the district court with discretion to limit discovery if it determines, *inter alia*, the burden or expense of the proposed discovery outweighs its likely benefit."  *Roberts v. Shawnee Mission Ford, Inc.*, 352 F.3d 358, 361 (8th Cir. 2003) (citing FED. R. CIV. P. 26(b)(1)).  The scope of permissible discovery is broader, however, than the scope of admissibility.  *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir.1992).  The Court must also consider whether the information sought is "proportional to the needs of the case," considering a number of factors, including "the parties' relative access to relevant information, . . . the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  FED. R. CIV. P. 26(b)(1).

Plaintiff must make a threshold showing that the requested information falls within the scope of discovery under Rule 26(b)(1).  *Hofer*, 981 F.2d at 380.  *See also Seger v. Ernest-Spencer Metals, Inc.*, No. 8:08CV75, 2010 WL 378113, at *2 (D. Neb. Jan. 26, 2010) (stating that the burden of making a threshold showing of relevance is on the party requesting discovery).  When a requesting party makes a threshold showing of relevance, then the burden shifts to the party resisting the motion to compel.  *See Continental Illinois Nat. Bank & Trust Co. of Chicago v. Caton*, 136 F.R.D. 682, 684-85 (D. Kan. 1991) ("All discovery requests are a burden on the party who must respond thereto.  Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden.") (internal citation omitted).  The party objecting has the burden to "substantiate its objections." *St. Paul Reinsurance Co. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 511 (N.D. Iowa 2000) (internal quotation marks and citation omitted).  A mere statement by the objecting party that the "request for production was overly broad, burdensome, oppressive and irrelevant is not adequate to voice a successful objection."  *Id.* (internal quotation marks and citation omitted).  Instead, the objecting party must prove that the "requested documents either

do not come within the broad scope of relevance defined pursuant to FED. R. CIV. P 26(b)(1) or else are of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Id.* (quoting *Burke v. New York City Police Dept.*, 115 F.R.D. 220, 224 (S.D. N.Y. 1987)).

The Eighth Circuit Court of Appeals has explained: "'The purpose of our modern discovery procedure is to narrow the issues, to eliminate surprise, and to achieve substantial justice.'" *Mawby v. United States*, 999 F.2d 1252, 1254 (8th Cir. 1993) (quoting *Greyhound Lines, Inc. v. Miller*, 402 F.2d 134, 143 (8th Cir. 1968)). "The rules are meant to insure that . . . parties can obtain '[m]utual knowledge of all the relevant facts gathered by both parties.'" *Id.* (citing *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).

Here, the Court finds there is at least a colorable prima facie showing that the withheld documents fall within the broad scope of liberal discovery because they contained one of the terms to search for potentially relevant documents in defendants' ESI. Plaintiff has not made a strong showing, other than this, that the withheld documents are relevant (but of course, without access to the documents, it is difficult for it to do so). On the other hand, defense counsel have represented that they have reviewed the documents and, although they contain one of the terms used for the ESI search, they do not in fact fall within the scope of discovery. The Court accepts that defense counsel, as officers of this Court, acted in good faith in making that determination. There is no way for the Court or plaintiff to double-check that work, however, without reviewing the documents themselves. Plaintiff believes that at least some of the nonresponsive documents are relevant, though their belief is not well supported and the few examples it identified in footnotes defendants have demonstrated are not relevant or have already been produced. The Court's confidence in defendants' response is colored, however, by the Court's conclusion that defendants have previously not complied with discovery

7

obligations.  (Doc. 115).

Balancing the countervailing factors, the Court finds it would be disproportional to require defendants to go back through the documents to identify those that fall within the four categories plaintiff believes are most likely to generate relevant documents.  Nor, even if it did, is it likely that plaintiff would not be any more satisfied or the Court more confident with the result.  The Court disagrees with plaintiff's presumption that the only reason defendants are unwilling to comply with its alternative request of producing the documents for plaintiffs to review is that defendants have something to hide.  Rather, the Court presumes defendants are unwilling to comply with the alternative because plaintiff wants defendants to pay the attorneys' fees associated with culling through the documents. The Court understands this reluctance, especially given that plaintiff has not been able to make a strong showing that the documents are relevant and defense counsel asserts that they have reviewed the documents and concluded they are not relevant.

The Court finds the appropriate resolution to this dispute is: (1) defendants produce all of the ESI documents it identified as unresponsive under an Attorneys Eyes Only label; (2) that the production is not to be deemed as an admission by defendants that the documents are relevant; and (3) that plaintiff bear its own costs of reviewing the documents for the categories it believes may hold relevant documents.  Should plaintiff discover relevant documents during this review which it believes were wrongfully withheld by defendants, then plaintiff can bring a motion for sanctions at that time to recover some or all of the attorneys' fees associated with the search.

## IV.    CONCLUSION

For the reasons above and as set forth herein, the Court **grants in part and denies in part** plaintiff's motion to compel ESI discovery.  (Doc. 102).  Defendants shall produce all of the ESI documents it identified as unresponsive under an Attorneys Eyes Only label.  That production will not to be deemed as an admission by defendants that

the documents are relevant. Plaintiff is to bear its own costs in reviewing those ESI documents; if plaintiff finds relevant documents it believes were wrongfully withheld, it may file a motion for sanctions.

**IT IS SO ORDERED** this 7th day of July, 2017.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa