# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| NACHURS ALPINE SOLUTIONS, CORP., f/k/a Na-Churs Plant Food Company, a Delaware Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>NUTRA-FLO COMPANY, an Iowa Corporation, and BRIAN K. BANKS,<br><br>Defendants. | No. 15-CV-4015-LTS<br><br>**ORDER** |

## TABLE OF CONTENTS

I. INTRODUCTION ………………………………………………………………… 1
II. PROCEDURAL HISTORY ……………………………………………………… 2
III. BACKGROUND FACTS ………………………………………………………… 5
IV. DISCUSSION …………………………………………………………………… 7
    A. Plaintiff's Motion to Strike ………………………………………………… 8
    B. Defendants' Motion to Strike………………………………………………17
V. CONCLUSION ……………………………………………………………………19

## *I.    INTRODUCTION*

This matter comes before the Court pursuant to cross motions to strike supplemental expert disclosures.

Plaintiff moves to strike defendants' supplemental disclosure of expert testimony by Dr. David Mengel. (Doc. 129). Alternatively, plaintiff requests the Court permit

it to re-depose Dr. Mengel at defendants' expense and to permit plaintiff to designate rebuttal experts. (*Id.*). Defendants resist plaintiff's motion, arguing that they could not have supplemented their expert's disclosure any sooner. (Doc. 138). Defendants state they will make Dr. Mengel available for a second deposition, but resist paying anything more than an attorney's travel expenses related to a second deposition of Dr. Mengel, and resist authorizing plaintiff to designate a rebuttal expert witness. (*Id.*).

In turn, defendants move to strike plaintiff's supplemental disclosure regarding its damages expert, John Grega, arguing that it is untimely. (Doc. 135). Plaintiff resists, arguing that it altered its theory of recovery in light of discovering that defendants did not sell a competing product. (Doc. 141). Alternatively, plaintiff indicates it will offer up Mr. Grega to be re-deposed and would not object to defendant being permitted to conduct further discovery and designate a rebuttal expert. (*Id.*).

For the reasons that follow, the Court denies plaintiff's motion to strike the supplemental disclosure of Dr. Mengel's expert testimony, but grants plaintiff's request for alternative relief by authorizing the re-deposing of Dr. Mengel at defendants' expense. The Court denies plaintiff's request to designate a rebuttal expert.

The Court similarly denies defendants' motion to strike plaintiff's supplemental disclosure of Mr. Grega's expert testimony, but will permit defendants to re-depose Mr. Grega at plaintiff's expense, and will permit defendants to designate a rebuttal expert witness.

## II.  PROCEDURAL HISTORY

On March 10, 2015, plaintiff filed suit against defendants in this Court. (Doc. 2). After litigation regarding a preliminary injunction, defendants filed an answer on April 15, 2015. (Doc. 27). On July 21, 2015, the Court held a telephonic scheduling and planning conference with the parties. (Doc. 29). On the same day, the Court

issued a Scheduling Order and Discovery Plan. (Doc. 30). The parties had prepared and submitted this plan to the Court. (*Id.*). It provided the following deadlines:

| | |
|---|---|
| Motions to add parties and amend pleadings | November 8, 2015 |
| Plaintiff's expert witness disclosures | January 8, 2016 |
| Defendants' expert witness disclosures | March 8, 2016 |
| Plaintiff's rebuttal expert disclosures | April 22, 2016 |
| Completion of Discovery | October 8, 2016 |
| Dispositive Motions | December 11, 2016 |
| Trial Ready Date | March 8, 2017 |

(*Id.*). These deadlines were set significantly beyond the normal deadlines provided for in this District's Instructions and Worksheet for Preparation of Scheduling Order and Discovery Plan. For example, the deadline for completing discovery is normally set eight months after submission of the proposed scheduling order; in this case, it was set for fifteen months later. The trial ready date is normally set thirteen months after submission of the proposed scheduling order; in this case, the trial ready date was set for twenty months later.

On July 21, 2015, the Court scheduled trial for April 24, 2017, more than two years after defendants answered plaintiff's complaint. (Doc. 31).

Plaintiff did not disclose experts by the January 8, 2016, deadline. On March 7, 2016, defendants filed an unresisted motion to extend their expert disclosure deadline. (Doc. 36). The following day, the Court granted defendants' motion, but *sua sponte* also extended plaintiff's rebuttal expert disclosure deadline. (Doc. 37). Neither party designated experts, however, by these extended deadlines.

On April 22, 2016, plaintiff filed a motion to extend all deadlines and the trial date. (Doc. 38). Plaintiff alleged that a combination of attempting to settle the case, the illness of an attorney, and difficulty in conducting ESI discovery necessitated a continuance of all the deadlines and the trial. (*Id.*). Defendants resisted the motion. (Doc. 39). On May 16, 2016, the Court denied plaintiff's motion. (Doc. 41).

3

On July 21, 2016, defendants filed a motion to strike plaintiff's experts, arguing that they were untimely disclosed. (Doc. 42). On August 25, 2016, the Court denied the motion, but granted the alternative relief of extending defendants' deadline for disclosing experts and the deadline for completion of discovery. (Doc. 49). The order also barred plaintiff from designating rebuttal expert witnesses. (*Id.*).

On October 7, 2016, the parties filed a joint motion to extend deadlines and continue the trial. (Doc.71). The Court entered a new scheduling order on October 20, 2016, which set the following deadlines:

| | |
|---|---|
| Defendants' Experts Disclosures | January 13, 2017 |
| Completion of Discovery | June 2, 2017 |
| Dispositive Motions | September 1, 2017 |

(Doc. 76). By a separate order, the Court scheduled the trial for April 9, 2018. (Doc. 77).

On March 31, 2017, the parties filed a joint motion to extend the deadline for completion of discovery to August 1, 2017. (Doc. 89). The Court granted the motion on April 3, 2017, extending the deadline, but noting that no further extensions would be granted. (Doc. 90).

On May 18, 2017, plaintiff filed a motion to compel discovery and for sanctions. (Doc. 98). On June 22, 2017, the Court entered an order granting plaintiff's motion, finding that defendants failed to properly disclose documents and answer interrogatories regarding documents, including a PowerPoint presentation at issue here, arguably containing trade secrets, and other documents defendant Banks obtained from plaintiff. (Doc. 115).

On July 17, 2017, the parties filed yet another motion to extend discovery and dispositive motions deadlines. (Doc. 125). The following day, the Court granted the

4

parties' motion, setting new deadlines of September 29, 2017, to complete discovery, and October 15, 2017, to file dispositive motions. (Doc. 126).

### III. BACKGROUND FACTS

On July 1, 2016, plaintiff disclosed its experts, including non-retained expert, John Grega. (Doc. 135). In an answer to Interrogatory No. 4, asking for information about its experts, plaintiff stated:

> John Grega will testify that, based upon market conditions, customer contact, and new product evaluation, NAS projected gross profits of approximately $81,521,593 through July 2020 which will be negatively impacted due to Defendants' violations as put forth in Plaintiff's Complaint. Mr. Grega will also testify that, to this date, approximately $277,469.20 in marketing expenses and $194,996.17 in new product costs have been incurred by NAS related to the products in question.

(*Id.*, at 6).

On January 13, 2017, defendants timely disclosed their experts' testimony, including that of Dr. Mengel. (Doc. 129-1). Dr. Mengel's report indicates that he was offering opinions on three issues:

> 1. If enough information on the production of potassium acetate for uses such as a deicing solution for airports or roadways or as a liquid fertilizer was readily available in the public domain prior to January 2015 for Nutra-Flo to develop and produce potassium acetate based foliar fertilizer or deicing products;
>
> 2. If potassium acetate based liquid fertilizers were available and being marketed in the US prior to January 2015 for field crops, turf or horticultural crops;
>
> 3. If the Nutra-Flo Chemical Company and affiliated organizations had any record or history of producing potassium acetate based de-icing products, or potassium acetate based fertilizers or plant growth promoting products prior to January 2015.

5

(*Id.*, at 5). Dr. Mengel did not offer an opinion regarding whether information regarding potassium acetate-based fertilizers was or could be a trade secret.

In March and April 2017, defendants produced ESI discovery documents to plaintiff. (Doc. 115, at 2).

On April 25, 2017, plaintiff took defendant Brian Banks' deposition. (Doc. 138, at 3). During that deposition, plaintiff marked and used Exhibits 47 & 48. (*Id.*). Exhibits 47 & 48 are documents that were contained in defendant Brian Banks' Dropbox, and which were produced by defendants to plaintiff as part of the ESI production in March and April 2017. (*Id.*, at 2-3).

On April 27, 2017, plaintiff took the deposition of Jason Glover, during which it marked and used Exhibit 75B. (*Id.*, at 3). Exhibit 75B is a PowerPoint presentation, also produced to plaintiff as part of ESI disclosures in March and April 2017. (*Id.*).

On May 18, 2017, plaintiff took Dr. Mengel's deposition. (Doc. 129-2, at 1). Dr. Mengel testified that he believed he had reviewed ESI discovery documents in preparing his opinion. (Doc. 129-2, at 2-3). Dr. Mengel testified that he would not render an opinion outside those disclosed in his report. (*Id.*, at 4-5). Plaintiff then asked Dr. Mengel whether he intended to render any opinion regarding documents produced during discovery that plaintiff contended contained its trade secrets. (*Id.*, at 4-6). In particular, plaintiff asked Dr. Mengel if he anticipated "rendering any kind of opinions on or about a power point presentation that Brian Banks shared with Nutra-Flo that's labeled Bio K on it?" (*Id.*, at 5). Defense counsel instructed Dr. Mengel not to answer the question on the ground that it was work product. (*Id.*, at 5-6).

On June 16, 2017, defendants filed a Supplemental Disclosure of Expert Testimony. (Doc. 129-3, at 2-3). In this document, defendants indicated that Dr. Mengel would offer opinions regarding whether Deposition Exhibits 12, 47, 48, and 75B could constitute trade secrets or whether the information contained in those documents

6

was readily available to the public. (*Id.*, at 3). Exhibit 12 is a PowerPoint titled "Overview of Potassium Acetate," which defendants had produced during discovery in January 2016. (*Id.*).

On June 20, 2017, plaintiff provided a supplemental answer to Interrogatory No. 9, asking for details about claimed damages. (Doc. 135, at 2). Plaintiff indicated, inter alia:

> [Plaintiff] seeks between $12,896,773-15,342,838 in compensatory damages. In June 2015, [plaintiff] was forced to reduce its prices to remain competitive with Nutra-Flo's price sheets. [Plaintiff's] original profit margin before this price decrease was higher because it had a first-to-market advantage regarding potassium acetate fertilizers for row crop use. Nutra-Flo destroyed that advantage by advertising that it could make the same product(s) at lower prices for the 2015 growing year. [Plaintiff] lowered its price on its Bio-K line in response to Nutra-Flo's advertising of Nutra-KA24. [Plaintiff] seeks loss of gross profit for five years, which is the length of time [plaintiff] anticipates it would have enjoyed the first-to-market advantage for potassium acetate fertilizers for row crop use. [Plaintiff's] damages calculation of $12,896,773 is conservative because it presumes no growth in sales and includes the difference in gross margin per unit times the projected sales volumes for each product effected. The $15,342,838 damages estimate presumes a growth in sales of the potassium acetate products per [plaintiff's] usual projections. These estimates have been provided as bates stamp NACHURS06393 -94.

(Doc. 135, at 15-16).

## IV. DISCUSSION

As noted, this order addresses the parties cross motions to strike supplemental expert disclosures. The Court will address plaintiff's motion first, as the first filed in time, and then address defendants' motion. The basic legal principles, applicable to both motions, will be discussed in detail only once.

### A. *Plaintiff's Motion to Strike*

Plaintiff argues that defendants violated the Federal Rules of Civil Procedure when they untimely disclosed Dr. Mengel's supplemental expert testimony. (Doc. 129-8, at 5). Plaintiff argues that the supplemental report did not correct his prior report or rebut new evidence. (*Id.*, at 5-7). Plaintiff further argues that it would be prejudiced by this untimely disclosure because it "has lost its ability to submit rebuttal expert witnesses" and "may not have time to re-depose Dr. Mengel to test his expert opinions." (*Id.*, at 8). Plaintiff asks that, in the alternative, the Court order defendants to pay for the re-deposition of Dr. Mengel and permit plaintiff to designate new rebuttal expert witnesses. (*Id.*, at 9). Thus, the questions before the Court are: (1) whether defendants' supplemental disclosure complied with Rule 26(e); and (2) if not, are sanctions appropriate and, if so, what sanctions the Court should impose.

### 1. *Compliance with Rule 26(e)*

The Eighth Circuit Court of Appeals has explained: "The purpose of our modern discovery procedure is to narrow the issues, *to eliminate surprise*, and to achieve substantial justice." *Mawby v. United States*, 999 F.2d 1252, 1254 (8th Cir. 1993) (quoting *Greyhound Lines, Inc. v. Miller*, 402 F.2d 134, 143 (8th Cir. 1968)) (emphasis in *Mawby*). "The rules are meant to insure that . . . parties can obtain '[m]utual knowledge of all the relevant facts gathered by both parties.'" (*Id.*) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). The rules pertaining to the disclosure of expert information is an important part of this discovery process.

Federal Rule of Civil Procedure 26(a)(2) requires the disclosure of the identity and written reports of witnesses who are retained to provide expert testimony at trial. The deposition of such witnesses may occur "only after the report is provided." FED. R. CIV. P. 26(b)(4)(A). Expert witness disclosures, as well as information provided in the

8

expert's report and deposition, must be supplemented by "[a]ny additions or changes to th[at] information." FED. R. CIV. P. 26(a)(2)(E), (e)(2). A late disclosure of an expert opinion can be "equivalent to a failure to disclose." *Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1008 (8th Cir. 1998) ("failure to disclose in a timely manner is equivalent to failure to disclose," citing *Sylla–Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 284 (8th Cir. 1995)).

Parties may supplement expert disclosures pursuant to Federal Rule of Civil Procedure 26(e), which permits supplementation "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." FED. R. CIV. P. 26(e)(1)(A). "A supplemental disclosure under Rule 26(e)(1)(A) is timely if it is made as soon as possible." *Hypertherm, Inc. v. Am. Torch Tip Co.*, Civil No. 05–cv–373–JD, 2009 WL 703271, at *1 (D. N.H. Mar. 16, 2009). *See also*, *e.g.*, *Malozienc v. Pac. Rail Servs.*, 572 F. Supp.2d 939, 943 (N.D. Ill. 2008) (holding supplementation was made in a timely manner "by supplementing discovery production as soon as possible"); *Walls v. Paulson*, 250 F.R.D. 48, 53 (D.D.C.. 2008) (finding supplemental responses untimely when made months after learning of information); *Hummer v. BNSF Ry. Co.*, No. 06-CV-1218, 2006 WL 3523752, at *2 (C.D. Ill. Dec. 6, 2006) (finding supplemental disclosure made nine days after party became aware of evidence was timely).

Courts have allowed an expert to supplement his or her report when the supplementation is consistent with prior testimony and "merely expand[s] upon or clarif[ies]" the initial opinions offered by the expert. *Wilson Rd. Dev. Corp. v. Fronabarger Concreters, Inc.*, 971 F. Supp. 2d 896, 903 (E.D. Mo. 2013). For example, supplementation after the close of discovery has been permitted when the supplementation contained the specifics of opinions previously proffered by the expert

9

"that the defendants had an opportunity to test during discovery." (*Id.*). Likewise, experts have been allowed to testify regarding supplemental declarations that provided more detailed information which was "entirely consistent with and d[id] not significantly expand on any of the opinions or reasons in the" expert's initial report. *Emerson Elec. Co. v. Suzhou Cleva Elec. Appliance Co.*, No. 4–13:CV-01043 SPM, 2015 WL 2176964, *3 (E.D. Mo. May 8, 2015). *See also Taylor v. Cottrell, Inc.*, 795 F.3d 813, 818 (8th Cir. 2015) (noting that "a post-deposition affidavit [will not be considered if it] contradict[s] prior testimony in an attempt to create issues of fact … [b]ut an affidavit may be submitted to clarify ambiguities or confusion in deposition testimony;" and concluding the district court abused its discretion in striking a witness' post-deposition supplemental affidavit because it "clarified and placed into context her prior testimony").

In *Omaha Public Power District v. Siemens Aktiengesellschaft*, No. 8:99CV352, 2002 WL 826830, at *1 (D. Neb. Jan.15, 2002), the court considered whether to strike a supplemental expert affidavit which was filed after the summary judgment deadline. The supplemental affidavit included a new opinion which had not been previously disclosed. *Omaha Pub. Power Dist.,* 2002 WL 826830, at *3. The court found the defendant offered no justification for its failure to comply with the disclosure requirements and had not given any explanation for its late disclosure. (*Id.*, at *5). The court also found the cross-claim defendant was prejudiced because the expert's new opinions were disclosed just a few weeks before the final pretrial conference and less than three months before trial. (*Id.*). The court determined that because the defendant had no justification for his late disclosure and because the other party was prejudiced, Federal Rule of Civil Procedure 37 required the court to exclude the new opinions of the expert witness. (*Id.*).

This Court has also previously addressed a similar situation. In *Wells v. Lamplight Farms, Inc.*, 303 F.R.D. 530, 534 (N.D. Ia. 2014), this Court held that

Federal Rule of Civil Procedure 26(a)(2)(A)-(B) and Northern District of Iowa Local Rule 26(b), "when read together, establish that the expert witness disclosure deadlines contained in a scheduling order are deadlines for disclosing all required information about a retained expert, including all of the opinions he or she will offer at trial." This Court further concluded that supplementation of reports after the expert designation deadline is only allowable for the limited purposes of correcting inaccuracies in the original report or addressing information not previously available to the disclosing party:

> Rule 26(e)(1) provides a limited exception to the deadlines provided in Rule 26(a)(2)(C), requiring that an expert witness supplement his report if he "learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not been made known to the other parties during the discovery process or in writing." . . . Rule 26(e) does not permit parties to file supplemental reports whenever they believe such reports would be "desirable" or "necessary" to their case. Rather, the Rule permits supplemental reports only for the narrow purpose of correcting inaccuracies or adding information that was not available at the time of the initial report.

*Wells*, 303 F.R.D. at 536-37 (quoting *Mineabea Co. v. Papst*, 231 F.R.D. 3, 6 (D.D.C. 2005)). This Court noted that the correct procedure, if the party believed it was entitled to relief from a deadline for some reasons, is to file a motion to modify the scheduling order and show good cause for the modification. (*Id.*, at 537).

Defendants argue that they supplemented Dr. Mengel's report in a timely manner, explaining that Dr. Mengel could not offer an opinion regarding Exhibits 12, 47, 48, and 75B in January 2017, because he did not know about them then (i.e., the information was not available at the time of the initial report). (Doc. 138, at 4). Defendants argue they did not have "enough time between the Banks and Glover depositions" and Dr. Mengel's deposition "to make the decision to have Professor Mengel review the questioned exhibits and express an opinion." (*Id.*). Once defendants made that decision, defendants explain, Dr. Mengel "needed an adequate amount of time to review the documents,

11

consult the information at his disposal, and arrive at his expert opinions." (*Id.*). To the extent plaintiff complains about not having enough time to re-depose Dr. Mengel, defendants fault plaintiff for waiting 35 days to file its motion to compel. (*Id.*).

The Court finds that defendants' supplemental disclosure constitutes a new opinion by Dr. Mengel and therefore is not timely. Dr. Mengel's new opinions are not mere corrections to prior opinions. The supplemental pleading discloses new opinions not previously rendered regarding specific documents and whether they constitute trade secrets, a matter of central importance to this litigation.

Defendants argue they could not make this disclosure earlier because plaintiff did not identify the exhibits as trade secrets until the April depositions of Banks and Glover. (Doc. 138, at 4). This may be true, but defendants' inability is a product of their own failure to timely identify these documents in discovery, as this Court previously found, so that plaintiff would have been aware of them in a more timely manner. This is not a case where defendants did not have the information available to them. The documents now marked as Exhibits 12, 47, 48 and 75B came from defendants. They did not timely identify the documents as responsive to discovery requests, which would have allowed plaintiff to more timely identify them as trade secrets. The fault for any timing issues, therefore, falls squarely on defendants' shoulders.

Defendants correctly state that Rule 26(a)(3) provides that "[u]nless the court orders otherwise, these [pretrial] disclosures must be made at least 30 days before trial." (Doc. 138, at 5, (quoting FED. R. CIV. P. 26(a)(3)(B)). Defendants then go on to incorrectly state that "[t]here does not appear to be an order in this case setting deadlines for pretrial disclosures or for supplementing expert disclosures." (Doc. 138, at 5). As previously noted, the deadline for all opinions an expert intends to offer at trial is the disclosure deadline contained in the Court's scheduling order. *Wells*, 303 F.R.D. at 534.

This Court set, and then moved at the parties' request, the deadline for disclosure of experts. Defendants' final deadline for expert disclosures was January 13, 2017. (Doc. 76). Defendants disclosed Dr. Mengel's opinions about the documents now marked as Exhibits 12, 47, 48, and 75B on June 16, 2017, over five months after the expert disclosure deadline. The supplementation therefore did not comply with the deadline set by the Court.

### 2. *Sanctions for Failure to Timely Comply With Rule 26(a)*

Having found defendants failed to comply with the deadline for providing expert disclosures pursuant to Rule 26(a), the Court must now determine whether sanctions are appropriate. FED. R. CIV. P. 37(c)(1) provides for applicable sanctions to be imposed in the event a party does not make the required disclosures under Rule 26(a). Rule 37(c)(1) provides:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard: (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

FED. R. CIV. P. 37(c).

When a party fails to provide the information or the identity of an expert witness in compliance with Rules 26(a) and 26(e), a court has wide discretion to fashion a remedy or sanction under Rule 37(c) that is appropriate under the circumstances. *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008). These sanctions can include the exclusion at trial of testimony on undisclosed opinions. *See* FED. R. CIV. P. 37(c)(1). These sanctions do not apply, however, if "the failure was substantially justified or is harmless."

FED. R. CIV. P. 37(c)(1). *See*, *e.g.*, *Wegener*, 527 F.3d at 692 (the district court did not abuse its discretion in excluding expert witness testimony supplemented less than three weeks prior to trial because, in relevant part, the late disclosure was neither substantially justified nor harmless, and "a continuance would have postponed a much-delayed trial"); *accord Williams v. TESCO Servs., Inc.*, 719 F.3d 968, 976 (8th Cir. 2013) (finding no "clear and prejudicial abuse of discretion" in the district court's decision to strike an expert's second report, which was disclosed after the close of both discovery and the summary judgment record, because that report "materially alter[ed], [rather than] merely clarif[ied]" the expert's original report and deposition testimony).

Importantly, "the exclusion of evidence is a harsh penalty [for non-compliance with discovery disclosure deadlines] and should be used sparingly." *Wegener*, 527 F.3d at 692 (quoting *ELCA Enters. v. Sisco Equip. Rental & Sales*, 53 F.3d 186, 190 (8th Cir. 1995). *See also Sylla-Sawdon*, 47 F.3d at 283-84 (holding that a trial court has great discretion in determining whether to strike expert testimony that is disclosed in contravention of the court's scheduling orders). *Cf. Jackson v. Allstate Ins. Co.*, 785 F.3d 1193, 1203–04 (8th Cir. 2015) (affirming, under the circumstances, the district court's denial of a motion to exclude expert trial testimony due to the late disclosure of a supplemental expert report). "The burden of proof is on the potentially sanctioned party to prove harmlessness or justification." *Cooper v. Wullweber*, No. C10-1032, 2012 WL 1904806, at *6 (N.D. Iowa May 25, 2012) (quoting *R.C. Olmstead, Inc. v. CU Interface, LLC*, 657 F. Supp. 2d 905, 913 (N.D. Ohio 2008) *aff'd*, 606 F.3d 262 (6th Cir. 2010)).

The Court finds that defendants have failed to carry their burden of showing that the failure to provide timely disclosure was justified. Defendants had the documents constituting Exhibits 12, 47, 48, and 75B in their possession long before the January 13, 2017, deadline for Dr. Mengel to render his opinions. Indeed, the Court previously found defendants failed to timely disclose this information in their discovery responses,

instead producing the documents to plaintiff in a large mass of ESI discovery. Defendants cannot now complain about plaintiff not marking the documents as exhibits earlier when they failed to timely disclose the documents in the first instance.

Whether the untimely disclosure is harmless is a different question. Plaintiff argues that it "may" not have time to re-depose Dr. Mengel. (Doc. 129-8, at 8). Plaintiff's own language is speculative and the Court finds time still remains to re-depose Dr. Mengel.[1] The re-deposition will, however, cost additional funds that would not have been necessary had defendants provided a timely disclosure. In that sense, defendants' violation of the Rule 26 was not harmless.

Having found that defendants have shown neither substantial justification for failing to comply with the disclosure requirements of Rule 26(a), or that the failure was harmless, the Court must now determine the appropriate sanction. The Court may exclude an expert's testimony when, as here, a party has failed to comply with the disclosure requirements of Rule 26. *See Wegener*, 527 F.3d at 692 (holding that when a party fails to provide information in compliance with Rule 26(a), the Court "may exclude the information or testimony as a self-executing sanction unless the party's failure to comply is substantially justified or harmless.") (citing FED. R. CIV. P. 37(c)(1)). *See also Tokai Corp. v. Easton Enters., Inc.*, 632 F.3d 1358, 1365 (Fed. Cir. 2011) ("Rule 37(c)(1) 'gives teeth' to the written report requirement of Rule 26(a)(2)(B).").

On the other hand, Rule 37(c)(1) also provides a district court with discretion in fashioning an appropriate sanction, taking into account the circumstances of the case. The Court, of course, possesses inherent power to impose sanctions in matters arising from discovery abuses. *See Sylla–Sawdon*, 47 F.3d at 280. In fashioning an

---

[1] Incidentally, the Court does not find that plaintiff unduly delayed in bringing this motion after defendants provided their supplementation because plaintiff spent that time trying to resolve the discovery dispute with defendants, as it was obligated to do.

15

appropriate remedy, a court should consider "the reason for noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony." *Wegener*, 527 F.3d at 692 (citing *Marti v. City of Maplewood*, 57 F.3d 680, 683 (8th Cir. 1995) (setting forth a variety of possibly relevant factors)).

The Court finds striking Dr. Mengel's supplemental opinion is too severe a remedy. "[T]he exclusion of evidence is a harsh penalty [for non-compliance with discovery disclosure deadlines] and should be used sparingly." *Wegener*, 527 F.3d at 692 (quoting *ELCA Enters. v. Sisco Equip. Rental & Sales*, 53 F.3d 186, 190 (8th Cir. 1995)); *see Bonin v. Chadron Cmty. Hosp.*, 163 F.R.D. 565, 566 (D. Neb. 1995) (reversing a magistrate judge's order striking expert as too harsh a sanction for the party's failure to make a timely and complete disclosure of expert witnesses). Moreover, trials are designed to get at the truth, and striking an expert opinion that may assist the jury in arriving at the truth could interfere with that goal. *See Kansas v. Cheever*, 134 S. Ct. 596, 602 (2013) (affirming a district court's denial of a motion to strike expert testimony, noting the "core truth-seeking function of the trial"). Therefore, the Court denies plaintiff's motion to strike Dr. Mengel's supplemental opinions.

Rather, the Court will grant plaintiff's alternative request for relief; that is, the Court will permit plaintiff to re-depose Dr. Mengel at defendants' expense. The Court finds it appropriate that defendants pay not only travel expenses, but also the costs of the deposition, including attorneys' fees. Defendants had the documents at issue in their possession, failed to properly and timely identify them in discovery, and therefore should bear the consequences of plaintiff having to re-depose Dr. Mengel when plaintiff was finally able to discover the documents in the large amount of ESI produced by defendants.

The Court will not, however, grant plaintiff's request to designate new rebuttal expert witnesses. The Court previously imposed that sanction as a result of plaintiff's own violation of discovery rules. As the Court previously stated, plaintiff may, if it chooses, call the experts it has thus far designated in rebuttal at trial, but plaintiff will not be permitted to identify any new expert witnesses to rebut the testimony of defendants' experts.

### B. *Defendants' Motion to Strike*

Defendants argue that plaintiff's supplemental disclosure of damages information, in response to Interrogatory No. 9, is untimely and "significantly altered the damages information that had previously been provided." (Doc. 135-1, at 2). Defendants point out that plaintiff did not supplement its answer to Interrogatory No. 4 regarding Mr. Grega, but note that during his deposition, Mr. Grega confirmed that he was asked to generate the information contained in the supplemental answer to Interrogatory No. 9 and planned to testify about this information at trial. (*Id.*). Defendants further argue that the information upon which the supplemental answer was based was known to plaintiff since June 2015 and therefore, plaintiff could have calculated these damaged long before the deadline for expert disclosures. (*Id.*, at 3-4). Finally, defendants argue they are harmed by the untimely supplemental answer because they did not designate a rebuttal damages expert (arguing that plaintiff's prior damages claim did not require one) and because the late disclosure prevented them from conducting discovery regarding the new damage claims. (*Id.*, at 4-5).

In response, plaintiff argues that it needed to adjust its theory of damages to accommodate discovery developments. (Doc. 141, at 2). Plaintiff claims that it based its earlier damages calculations on the premise that defendants had sold a competing potassium acetate-based product and was "skeptical" of defendants' discovery responses denying this proposition "in light of the information that was being found in ESI . . . ."

(*Id.*, at 6). Through discovery, however, plaintiff apparently became satisfied that no competing product had been sold and therefore changed its damages calculations to be based on how it had to lower its prices to compete with defendants' published price sheet. (*Id.*, at 6-7). Further, plaintiff argues that the supplemental disclosure constitutes an update of financial information. (*Id.*, at 5-6). For these reasons, plaintiff argues that its supplemental disclosure was substantially justified. (*Id.*, at 5-7). Plaintiff argues, in the alternative, that any violation of the discovery rules is harmless because it will not object to defendants re-deposing Mr. Grega and to naming a rebuttal expert. (*Id.*, at 9).

In their reply brief, defendants point out that they did not produce ESI to plaintiff until March 2017, and therefore plaintiff "simply chose to ignore" for nine months defendants' responses indicating that it did not sell a competing product. (Doc. 149, at 2). Defendants further argue that plaintiff's supplemental disclosure does not simply comprise of an update of financial projections, but reflects an entirely new theory of damages. (*Id.*, at 2-3).

The Court agrees that plaintiff's supplemental answer to Interrogatory No. 9 in large part constitutes a completely new theory of damages and is not simply an update of financial data. The Court further finds that plaintiff's failure to make a timely disclosure of this damage theory was not substantially justified by its skepticism of defendants' discovery responses. Nor is the untimely supplementation harmless because defendants chose not to hire a rebuttal expert based on plaintiff's prior damages theory.

Again, however, the Court finds striking the supplemental expert disclosure too harsh of a sanction and one that would impair the jury's ability to arrive at the truth. The Court finds there is sufficient time remaining before trial for the discovery violation to be remedied by permitting defendants to hire a rebuttal expert. The Court will therefore extend deadlines to permit defendants time to hire and disclose a rebuttal

damages expert. The Court will also extend the discovery deadline for the limited purpose of permitting plaintiff to depose the rebuttal expert.

## V. CONCLUSION

The Court finds that both parties to this litigation have repeatedly failed to comply with deadlines and discovery obligations, and have repeatedly cried foul upon each other. The result has been significant delay and mounting costs, the very antithesis of the goals set out in Rule 1 of the Federal Rules of Civil Procedure. The parties have no one but themselves to blame for this seemingly never-ending lawsuit and discovery sparring. Once again, the Court finds the parties to have violated their obligations and imposes sanctions. The Court provides fair warning here that any further violations of discovery obligations by the parties in this case will result in much more serious sanctions, including possibly against the lawyers personally.

The Court finds defendants failed to provide a substantial justification for failing to make timely expert witness disclosure and that such failure was not harmless. Nevertheless, the Court finds that plaintiff's motion to strike defendants' supplemental expert disclosure is too harsh of a remedy. Therefore, the Court **denies** plaintiff's motion to strike defendants' supplemental expert disclosure (Doc. 129). The Court **grants**, however, plaintiff's request for alternative relief by authorizing plaintiff to re-depose Dr. Mengel at defendants' expense. The Court denies plaintiff's request for authorization to designate rebuttal expert witnesses.

The Court similarly finds plaintiff failed to provide a substantial justification for failing to make timely expert witness disclosure and that such failure was not harmless. Nevertheless, the Court finds that defendants' motion to strike plaintiff's supplemental expert disclosure is too harsh of a remedy. Therefore, the Court **denies** defendants' motion to strike plaintiff's supplemental expert disclosure (Doc. 135). The Court will provide alternative relief by authorizing defendant to re-depose Mr. Grega at plaintiff's

expense. The Court will further permit defendants to designate a rebuttal damages expert. Defendants shall have until September 29, 2017, to provide full disclosures regarding any rebuttal damages expert. Plaintiff will have until October 15, 2017, to depose the rebuttal expert at its own expense.

**IT IS SO ORDERED** this 8th day of September, 2017.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa